**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Weitz Company LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>RCI Systems Incorporated, et al.,<br><br>　　　　　　Defendants. | No. CV-13-02293-PHX-DGC<br><br>**ORDER** |

Plaintiff Weitz Company LLC ("Weitz") has filed a motion for partial summary judgment. Doc. 14. The motion has been fully briefed. Defendants Engineered Fire Solutions, Inc. ("EFS"), RCI Systems Inc. ("RCI"), and Travelers Casualty & Surety Co. of America ("Travelers") have filed a motion to dismiss or, alternatively, stay the case pending resolution of a parallel case in state court. Doc. 21. That motion has also been fully briefed. For the reasons stated below, the Court will deny RCI's motion to dismiss or stay and grant Weitz's motion for partial summary judgment.[1]

**I.    Background.**

Weitz was the general contractor for the construction of a retirement home project known as the Sagewood Lifecare Facility ("Sagewood"). Doc. 21 at 2. Weitz entered into a subcontract with RCI (the "subcontract") to hire RCI to design, fabricate, and

---

[1] The request for oral argument on the motion to dismiss or stay is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

install the fire sprinkler system at Sagewood. Doc. 24 at 2. EFS designed the system for RCI, and Travelers was the surety who covered RCI's liability to Weitz under the subcontract. *Id*. The subcontract required RCI to "defend, indemnify and hold harmless [Weitz] . . . from and against all claims, damages, losses, expenses, including, but not limited to, attorneys' fees, property damage, bodily injury, and loss of use arising out of, caused by, or related to, in any way, the performance by [RCI] of its Work . . . or any breach of any provisions of the [subcontract]." Docs. 15-1 at 74.

Weitz completed the project, incorporating RCI's design, fabrication and installation of the sprinkler system, including RCI's selection of a corrosion inhibitor called the Potter Pipe Shield ("Potter Shield"). Doc. 14 at 3.[2] Between January and March, 2011, the fire sprinkler system experienced leaks, and in April of that year Weitz was ordered to repair it by the owner of Sagewood, LCS-Westminster Partnership IV, LLP ("LCS"). *Id*. The repairs ultimately cost Weitz more than $6 million. *Id*.

In July 2012, Weitz filed an action in Maricopa County Superior Court against LCS for breach of contract, unjust enrichment, and breach of duty to cooperate. Doc. 21-1 at 2-13. Weitz alleged that, under its contract with LCS, the cost of the sprinkler system repairs should have been covered by LCS's property insurance coverage and, under that coverage, LCS was required to reimburse Weitz for the cost of repairing the sprinkler system. *Id*., ¶¶ 4-12. Weitz sought to recover the costs it incurred to fix the system. *Id*. at 11.

In December 2012, LCS filed a third-party complaint in the state court action against RCI and a variety of vendors and manufacturers of parts of the sprinkler system. *Id*. at 14. That complaint identified RCI as the designer and installer of the fire suppression system at Sagewood and sought indemnification, apportionment, and contribution from the additional defendants for negligence that contributed to the damages sustained by Weitz, *id*. at 18-19, and for claims of breach of implied warranty

---

[2] Weitz and RCI signed a change order in September 2010 which increased the subcontract amount and under which RCI procured and installed the Potter Shield corrosion inhibitor. Docs. 15, ¶ 3; 20, ¶ 3.

- 2 -

and negligence, *id.* at 21-22.  LCS singled out RCI for breach of contract and express warranty, claiming that LCS was a third-party beneficiary to the subcontract between RCI and Weitz.  *Id*. at 19.

Weitz then filed its own complaint against the third party defendants in the state court action, asserting claims for product liability, negligent misrepresentation, negligence, and breach of warranties. *Id*. at 25.  This complaint alleged claims against all of the vendors and manufacturers named in LCS's third-party complaint *except* RCI.  *Id.* at 31-35.

Finally, Weitz filed this action in federal court on November 18, 2013, against RCI, EFS, and Travelers.  Doc. 1.  The complaint in this case seeks indemnification from RCI under the subcontract between RCI and Weitz (Doc. 1 at 5), and asserts breach of the subcontract against RCI (*id*. at 6).  The complaint also asserts claims for negligence and breach of implied and expressed warranties against RCI and EFS, *id*. at 7-9, and seeks to recover on the performance bond from Travelers that guaranteed RCI's obligations under the subcontract, *id*. at 8-9.

**II.    Motion to Dismiss or Stay.**

**A.    Legal Standard.**

Defendants seek dismissal or a stay of the federal proceeding under the *Colorado River* doctrine.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  "Under the doctrine enunciated by the United States Supreme Court in *Colorado River*, a federal district court may postpone or decline to exercise its jurisdiction in deference to a parallel state proceeding.  The doctrine is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *Morisada Corp. v. Beidas*, 939 F. Supp. 732, 735 (D. Haw. 1995) (citing *Colorado River*, 424 U.S. at 813, 817 and *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 17 n.20 (1983)) (internal quotation marks omitted).  Considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," may in appropriate cases result in

a federal court staying litigation when there is concurrent state court litigation involving the same matter. *Colorado River*, 424 U.S. at 817. The Supreme Court has counseled, however, that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *id.* at 817, and that the *Colorado River* doctrine should be invoked only in "exceptional circumstances," *Moses H. Cone*, 460 U.S. at 19.

Courts have identified several factors to be considered in deciding whether a case should be stayed under *Colorado River*. These include (1) whether either the state or federal court has assumed jurisdiction over property, (2) the relative convenience of the two forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) whether state or federal law controls, and (6) whether the state proceeding is adequate to protect the parties' rights. *See Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989) (citing *Colorado River*, 424 U.S. at 818, and *Moses Cone*, 460 U.S. at 25-26). The Ninth Circuit has identified at least three additional factors: (7) whether the state and federal cases are "substantially similar," (8) whether the second suit filed by the plaintiff is an attempt to forum shop or avoid adverse rulings by the state court, and (9) whether the state proceedings will resolve all of the issues in the federal action. *See id.* at 1416-17; *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912-13 (9th Cir. 1993). The relevant factors in a *Colorado River* analysis "are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *American Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988) (quoting *Moses Cone*, 460 U.S. at 16).

**B.  Analysis.**

The first two factors have no bearing on this case because there is no real property at issue and both this Court and the state court are convenient for the parties. *See R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011). The remaining factors are discussed in turn, and the Court remains "mindful that '[a]ny doubt as to whether a factor exists should be resolved against a stay or dismissal.'" *Id.* (citing *Travelers Indem.*

*Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990)).

### 1. Order in Which Forums Obtained Jurisdiction.

The Ninth Circuit has directed that "[p]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Travelers*, 914 F.2d at 1370 (citing *Moses Cone*, 460 U.S. at 21) (brackets and internal quotation marks omitted). "The mere existence of a case on the state docket in no way causes a substantial waste of judicial resources nor imposes a burden on the defendant which would justify abstention." *Morisada*, 939 F. Supp. at 738 (citations omitted).

Defendants argue that the state case was filed in July 2012, disclosure and discovery have taken place, and a trial date has been set. Doc. 21 at 9. The state action is clearly more advanced than this action, which was filed in November 2013. As Plaintiffs point out, however, a motion for summary judgment has been filed in this case, the parties have engaged in some discovery, and a scheduling conference has been held. Doc. 24 at 3. This factor weighs slightly in favor of abstention.

### 2. Whether State or Federal Law Controls.

"Although the presence of federal-law issues must always be a major consideration weighing against surrender of jurisdiction, the presence of state-law issues may weigh in favor of that surrender only in some rare circumstances." *R.R. St. & Co.*, 656 F.3d at 980 (citing *Travelers*, 914 F.2d at 1370; *see also Moses H. Cone*, 460 U.S. at 26) (internal quotes omitted). This is not such a rare circumstance. The Supreme Court emphasized that the court's task "is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of [federal] jurisdiction." *Moses Cone*, 460 U.S. at 25-26 (emphasis in original). The state law claims at issue here are common tort and contract claims that federal courts, sitting in diversity, are well equipped to adjudicate. This factor is neutral.

### 3. Piecemeal Litigation.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters*, 843 F.2d at 1258. This may be the most important factor in a *Colorado River* analysis. *See Moses H. Cone,* 460 U.S. at 16 ("By far the most important factor in our decision to approve dismissal [in *Colorado River*] was the clear federal policy . . . [of] avoidance of piecemeal adjudication[.]"); *Gen. Star Intern. Indem. Ltd. v. Chase Manhattan Bank*, No. 01 CIV 11379 et al., 2002 WL 850012, at *7 (S.D.N.Y. May 3, 2002) ("[T]he cornerstone of the seminal *Colorado River* decision was the threat of piecemeal litigation[.]"). But "[a] correct evaluation of this factor involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation." *Travelers,* 914 F.2d at 1369 (citation omitted). The mere fact that a similar state court action is concurrently pending will not act as a "bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" *Id.* (citing *Colorado River*, 424 U.S. at 817).

Defendants argue that "the damages being claimed in both actions are identical" and could result in double recovery for Plaintiff. Doc. 21 at 9. Plaintiff argues that even if it prevails on all claims here, its damages could simply be reduced in any award it receives in the state court proceeding, and vice versa if the federal litigation concludes first. Doc. 24 at 9.

The parties agree that the two proceedings have some things in common: both arise from damages that resulted from the fabrication and installation of the emergency sprinkler system, and Weitz and RCI are parties in both cases. But the parties agree on little else. Defendants assert that "there is no real dispute that Weitz seeks to recover the same damages in both proceedings." Doc. 21 at 9. But according to Weitz, in this action it seeks only "unreimbursed out-of-pocket losses of $2.5 million, but is seeking "$5+ million in subrogation claims in the state court proceeding" which it claims "are irrelevant to this case." Doc. 24 at 9.

1 The Court agrees with Defendants. In its response to Defendants' motion, Plaintiff explains how damages in both actions will be reduced depending on the result in the other case, but then concludes by arguing that "neither is dependent upon the other." *Id*. This last statement does not follow. Damages in both cases may not be exactly the same – Plaintiffs seek more in damages in the state court proceeding than in this case – but by Plaintiff's own explanation the two are clearly intertwined.

Defendants also assert that the two proceedings "involve substantially the same legal issues." Doc. 21 at 9. The Court agrees. Both involve determinations of liability for the costs of the sprinkler system repair. Additionally, LCS has asserted in the state actions that it is a third party beneficiary to the subcontract between RCI and Weitz, thereby seeking a determination of the rights and obligations under that subcontract. This determination is at the heart of the dispute and the claims asserted here.

Because the damages sought and the legal issues raised in both cases are substantially similar, a danger of piecemeal litigation exists. This factor weighs in favor of abstention.

### 4. Whether the Cases are "Substantially Similar."

For this factor to weigh in favor of abstention, "[w]e require a parallel suit . . . . Otherwise, a stay or dismissal will neither conserve judicial resources nor prevent duplicative litigation." *R.R. St. & Co. Inc.*, 656 F.3d at 982. Exact parallelism between the two cases need not exist. *Nakash*, 882 F.2d at 1416. "It is enough if the two proceedings are "substantially similar." *Id*. (citing *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988)); *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1985); *see Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985)).

The state court proceeding is a parallel suit and similar legal issues are presented in both fora, including the subcontract at issue in this suit and the interdependent damages. This factor favors abstention.

### 5. Forum Shopping.

"Forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *See Morisada*, 939 F. Supp. at 741 (citations omitted). Defendants claim that Plaintiffs are forum shopping and attempting to "hedge their bets" by bringing suit in both courts. Doc. 21 at 11. It is true that Plaintiffs could have raised these issues in the state suit, but Defendant does not allege any specific tactical advantage from filing suit in federal court, or any adverse ruling that Plaintiff seeks to avoid in state court. *See Travelers*, 914 F.2d at 1371 (finding a lack of forum shopping in the *Colorado River* context where defendant did not allege plaintiff had sought to avoid adverse rulings or gain a tactical advantage in federal court). Defendant nevertheless asks the Court to presume forum shopping because Plaintiff "cannot offer any reasonable explanation why it could not have adjudicated these claims in the already pending State Court Action." Doc. 21 at 11. As the Ninth Circuit instructs, "we are cautious about labeling as 'forum shopping' a plaintiff's desire to bring previously unasserted claims in federal court. '[T]he desire for a federal forum is assured by the constitutional provision for diversity jurisdiction[.]'" *R.R. St. & Co.*, 656 F.3d at 982 (quoting *First State Ins. Co. v. Callan Assocs., Inc.*, 113 F.3d 161, 162 (9th Cir. 1997)). This factor does not favor abstention.

### 6. Whether State Court Proceedings Will Resolve All Issues.

The Ninth Circuit has held that "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a *Colorado River* stay or dismissal." *R.R. St.*, 656 F.3d at 982 (internal quotes and cites omitted). Plaintiffs assert that this factor weighs heavily against abstention because none of the claims Weitz pursues here are present in the state court action and two of the Defendants in this case are not parties there. Doc. 24 at 11.

The Court cannot agree that there are no overlapping issues. As discussed, RCI is a party to the state case, and LCS has asked the state court to resolve the rights and obligations under the subcontract between RCI and Weitz. Nevertheless, Plaintiffs

- 8 -

claims in this case are not asserted in the state suit and two defendants in this case (EFS and Travelers) are not parties in the state suit and their rights and obligations cannot be resolved there. This factor weighs heavily against abstention.

### C. Conclusion.

Although several factors favor abstention, the Court is persuaded that a stay or abstention is not appropriate under the narrow *Colorado River* doctrine. Plaintiff's claims against RCI are not asserted in the state case, and two other defendants named in this case have not been sued there. The state case therefore will not resolve the issues presented here, and substantial doubt as to whether the state proceedings will resolve the federal action precludes a *Colorado River* stay or dismissal. *R.R. St.*, 656 F.3d at 982; *see also Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005); *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir.1993). The Court therefore will not stay or dismiss this action.

## III. Motion for Partial Summary Judgment.

### A. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.     Analysis.**

Plaintiff Weitz has moved for summary judgment on its first claim against RCI. Doc. 14. That claim asserts that Weitz "is entitled to be defended and held harmless against claims and have its expenses and costs arising out of the design, fabrication and/or installation of the FS System, including the recommendation, selection and introduction of Potter Shield, reimbursed." Doc. 1, ¶ 20. RCI responds that summary judgment is not appropriate at this stage because (1) the damage to the fire sprinkler system may have been caused by the failure of products used to fabricate the system, and are not, therefore, covered by the indemnity provision of the subcontract; (2) there has been no determination that the costs of the damages which Weitz paid to LCS needed to be paid by Weitz, and thus the indemnification clause has not been triggered; and (3) it is unclear which indemnity clause in the subcontract Weitz seeks to enforce. Doc. 19 at 4.

There is no real dispute which indemnity provision is at issue here, as Weitz recites the language in its motion. Doc. 14 at 4. The provision, found in section 8.4.1 of the subcontract, reads as follows:

> To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless the Contractor … from and against all claims, damages, losses, expenses including, but not limited to, attorneys' fees, property damage, bodily injury, and loss of use, arising out of, caused by or related to, in any way, the performance by Subcontractor of its Work under the Subcontract Documents, Subcontractor's Work or any breach of any provisions of the Subcontract Documents by Subcontractor, or any negligent acts or omissions of the Subcontractor, its sub-subcontractors, anyone employed directly or indirectly by any of them or anyone for whose acts or omissions any of them may be liable or responsible regardless of whether the claim, loss, damage or expense is caused in part by any negligent act or omission by a party indemnified hereunder.

Docs. 15-1 at 74.

Additionally, RCI's argument that the clause has not been triggered because Weitz is not a defendant and there has been no determination of liability is unpersuasive. The judgment that Weitz seeks at this stage, as articulated in its first claim, largely mirrors the

language of the provision itself: Wietz seeks to be defended and indemnified against claims, expenses, and costs arising out of the sprinkler system.  There is no dispute that RCI oversaw the design and installation of that system, including the selection and installation of the Potter Shield product.

Finally, the Court finds no merit in RCI's argument that the indemnity provision does not apply because the damage might be the result of a failure of the Potter Shield product.  The language of the provision – which RCI accepted when it signed the subcontract – is very broad.  It covers the work of RCI as the subcontractor.  There is no dispute that RCI's work for Weitz included the "design, fabrication and/or installation of the FS System" for which Weitz seeks to be indemnified.  And even if the Potter Shield product was the cause of the damage – which this Court need decide at this time – RCI's selection and installation of that product was clearly part of its work under subcontract.  Weitz's claim against RCI is clearly for losses "arising out of, caused by, or related to, in any way, the performance by subcontractor[.]"  Docs. 14 at 4, 19 at 5.

**IT IS ORDERED:**

1. Defendants' motion to stay or dismiss (Doc. 21) is **denied.**

2. Plaintiff's motion for partial summary judgment (Doc. 14) is **granted**.  The Court grants summary judgment to the following extent:  RCI is legally required under the section 8.4.1 of the subcontract with Weitz to defend, indemnify and hold harmless Weitz from and against all claims, damages, losses, and expenses, including, but not limited to, attorneys' fees, property damage, bodily injury, and loss of use, arising out of, caused by or related to, in any way, the performance by RCI of its Work under the Subcontract Documents, RCI's Work or any breach of any provisions of the Subcontract Documents by RCI, or any negligent acts or omissions of the RCI, its sub-subcontractors, anyone employed directly or indirectly by any of them or anyone for whose acts or omissions any of them may be liable or responsible regardless of whether the claim, loss, damage or expense is caused in part by any negligent act or omission by a party indemnified hereunder.

1        3.     The Court is not entering summary judgment on which specific claims, damages, losses, and expenses are covered by this obligation, nor on the amount of any such claims, damages, losses, and expenses.

Dated this 28th day of July, 2014.

_____
David G. Campbell
United States District Judge